IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEVEN OWENS, | Civil Action No. 2: 13-cv-0328 |
| Plaintiff, | |
| v. | United States District Magistrate Cynthia Reed Eddy |
| BRIAN COLEMAN; SCOTT NICKELSON, JOHN ALBRIGHT, ROBERT HAWKINBERRY, RONALD HOSTIVICH, and CARL WALKER, sued in their individual and official capacities, | |
| Defendants. | |

**MEMORANDUM OPINION AND ORDER**

Presently pending is the Motion to Dismiss filed by Defendants, with brief in support (ECF Nos. 21 and 22). For the reasons that follow, the Motion will be granted in part and denied in part.[1]

**Factual Background**

Plaintiff, Steven Owens, is a state prisoner committed to the custody of the Pennsylvania Department of Corrections and at all times relevant to this lawsuit was incarcerated at SCI-Fayette, where the Defendants were employed.[2] This action was initiated by Plaintiff on March 6, 2013, by the filing of a prisoner civil rights Complaint. (ECF No. 1). However, because the Complaint was received without a filing fee or an *in forma pauperis* motion, the case was administratively closed. On March 20, 2013, Plaintiff filed a motion for leave to proceed *in*

---

[1] All parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636 et seq.; Consent to Trial / Jurisdiction by United States Magistrate Judge (ECF Nos. 5 and 24).

[2] On April 18, 2013, Plaintiff notified the Court that he had been transferred to SCI-Huntingdon in Huntingdon, PA.

1

*forma pauperis* and the case was thereafter reopened and the Complaint filed. Named as Defendants are Brian Coleman, Superintendent of SCI-Fayette; Scott Nickelson, Major of the Unit Management Team at SCI-Fayette; Ronald Hostivich, Maintenance Supervisor; Carl E. Walker, Captain of the Restricted Housing Unit ("RHU"); John Albright and Robert Hawkinberry, Lieutenants of the RHU, all sued in their individual and official capacities.

According to the Complaint, on July 14, 2012, Plaintiff was placed in Cell J-D 1012 in the RHU at SCI-Fayette, a cell which was "out of order" as there was a crack in the pipes and in the in-cell shower which would cause the entire cell to flood, even if no one was using the shower. On July 15, 2012, as an inmate in the adjacent cell, J-D 1011, took his in-cell shower, the shower in Plaintiff's cell "turned on by itself flooding" Plaintiff's cell. As a result of the flooding, Plaintiff slipped and fell injuring his back and hitting his head on the floor.

Plaintiff was seen by a nurse who informed him that days prior to his fall, another inmate, who also had been housed in cell J-D 1012, was injured in the same manner caused by the same "cell dysfunctions." Plaintiff was also informed by a Sergeant that cell J-D 1012 had not been repaired even though several works orders had been placed to have the cell repaired and Plaintiff was now the second inmate to be injured as a result of the cell flooding. From the Complaint, it appears that Plaintiff was transferred to a different cell three (3) days after his fall.

Plaintiff alleges that as a result of the injuries he sustained in his fall, he suffers from neck and back injuries, constant headaches, dizzy spells, and pain through his neck, back and shoulders. He seeks declaratory and injunctive relief, as well and compensatory and punitive damages.

Presently pending is Defendants' Motion to Dismiss, with brief in support, arguing that the complaint should be dismissed for failure to state a claim upon which relief may be granted

2

(ECF Nos. 21 and 22). By Order of October 7, 2013, Plaintiff was given leave to either file an amended complaint in this action no later than November 12, 2013, and if he did not desire to file an amended complaint, Plaintiff was ordered to file a response in opposition to Defendants' Motion to Dismiss no later than November 12, 2013 (ECF No. 23). To date, Plaintiff has not complied with the Court's order, which specifically stated that should Plaintiff fail to comply with the order, the Motion to Dismiss may be decided without the benefit of Plaintiff's response.

On December 12, 2013, the Court entered an Order requiring Plaintiff to show cause on or before December 30, 2013, why the motion should not be decided without the benefit of his response (ECF No. 25). On January 2, 2014, Plaintiff filed a Motion for Extension of Time in which to file a response, which request was granted and Plaintiff was given an extension until January 21, 2014, in which to file a response to the pending motion to dismiss. Plaintiff was again advised that failure to comply with the Order would result in the motion to dismiss being decided without the benefit of his response. (Text Order of 01/02/2014). As of the date of this Memorandum Opinion, Plaintiff has not responded to Defendants' motion and the time for responding has now passed. Therefore, in the absence of any timely response by Plaintiff, the Court will deem the motion to dismiss to be ripe for resolution and will resolve the Motion to Dismiss on the merits without the benefit of Plaintiff's response.

**Standard of Review**

A.   Pro Se Litigants

Pro se pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520–521 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor

syntax and sentence construction, or the litigant's unfamiliarity with pleading requirements. *Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley,* 141 F.2d 552, 555 (3d Cir.1969) (petition prepared by a prisoner may be inartfully drawn and should be read "with a measure of tolerance").

In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name." *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).[3] *See also Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins,* 293 F.3d at 688). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. *Gibbs v. Roman,* 116 F.3d 83 (3d Cir. 1997). *See, e.g., Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir.1996) (discussing Fed.R.Civ.P. 12(b)(6) standard); *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir. 1990) (same). Notwithstanding this liberality, pro se litigants are not relieved of

---

[3] The Court of Appeals for the Third Circuit has explained the liberal construction of pro se pleadings, as follows:
> The federal rules do not adhere to the ancient principle that a pleading must be construed most strongly against the pleader. Nor do the federal courts require technical exactness or draw refined inferences against the pleader; rather, they make a determined effort to understand what he is attempting to set forth and to construe the pleading in his favor, whenever justice so requires. This is particularly true when a court is dealing with a complaint drawn by a layman unskilled in the law. In these cases, technical deficiencies in the complaint will be treated leniently and the entire pleading will be scrutinized to determine if any legally cognizable claim can be found within it.

*Lewis v. Attorney General of U.S.,* 878 F.2d 714, 722 (3d Cir. 1989) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1286, at 381-84 (1969)).

their obligation to allege sufficient facts to support a cognizable legal claim. *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002).

Because Plaintiff is a pro se litigant, this Court may consider facts and make inferences where it is appropriate.

B.  Motion to Dismiss Pursuant to Rule 12(b)(6) - The Legal Standard

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied,* -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly*, such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal,* the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state

a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, '"where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id*. (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary judgment. *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile. See *Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.,* 482 F.3d 247, 251 (3d Cir. 2007).

**Discussion**

A. <u>Claims Brought Against Defendants in their Official Capacities</u>

Defendants argue that any claims brought against them in their official capacities must be dismissed because such claims are barred by the Eleventh Amendment to the United States Constitution. All of the named Defendants are employees of the Commonwealth of Pennsylvania, more specifically all named Defendants are employees of the Pennsylvania Department of Corrections.

Title 42, United States Code, section 1983 makes clear that claims brought pursuant to § 1983 must be brought against a "person" acting "under color" of law. In cases of suits against state officials sued in their official capacities, the United States Supreme Court has held that such "official capacity" parties are not "persons" under § 1983. *See Hafer v. Melo*, 502 U.S. 21, 25-27 (1991); *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989). As such, a party sued in his official capacity is not a person capable of being sued under § 1983. *Id*.

When a plaintiff sues a state actor in his individual or personal capacity, such a suit "seek[s] to impose personal liability upon a government official for actions he takes under color of state law." *Kentucky v. Graham,* 473 U.S. 159, 165 (1985). In contrast, a claim brought against a state actor in his official capacity "generally represents only another way of pleading an action against an entity of which an officer is an agent." *Id.* A suit brought against an individual state actor in his official capacity, therefore, is deemed to be a suit against the state. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). "As such, it is no different from a suit against the State itself." *Id*. (*citing Kentucky v. Graham,* 473 U.S. 165–66 (1985)). The Eleventh Amendment to the United States Constitution has been interpreted to bar suits for money

damages by private parties in federal court against states or state agencies. *See Kentucky v. Graham*, 473 U.S. 159, 167 n. 14 (1985); *Melo v. Hafer,* 912 F.2d 628, 635 (1990).

Accordingly, to the extent Plaintiff is endeavoring to sue Defendants for money damages in their "official capacities," such claims are not proper under § 1983, and are otherwise barred by the Eleventh Amendment, and will be dismissed. To the extent the Defendants are sued in their individual capacities, these claims are discussed below.

B.    First Amendment Retaliation Claims

"Retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution . . . . " *White v. Napoleon,* 897 F.2d 103, 111-12 (3d Cir. 1990). To establish a section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements, *to wit:* that (1) he engaged in a constitutionally protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001).

The Complaint states that Defendant Walker initially retaliated against Plaintiff by ordering Plaintiff to be placed in the "hazardous cell." However, the Complaint is void of any allegations which reflect that Plaintiff was placed in the "hazardous cell" in retaliation for his engaging in any constitutionally protected activity. Therefore, this claim will be dismissed.

The Complaint also contains factual allegations that Defendants Coleman, Albright, and Walker denied Plaintiff's grievances and/or appeals regarding the conditions of his cell "out of retaliation to harass the Plaintiff and to also obstruct the Plaintiff from succeeding in the grievance process." *See* ¶¶ 18-20, 24, 27-28, and 33- 34 of the Complaint.

Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. It is not at all clear that the rejection or denial of a grievance, or any similar action, constitutes an "adverse action" as required to state a retaliation claim. As this Court previously noted:

> It is doubtful that rejection or denial of a grievance constitutes the kind of adverse action that would deter a person of ordinary firmness from exercising constitutional rights. In this regard, the grievance process contains multiple levels of review, allowing an inmate to redress mistaken rejections or denials. Thus, the mere fact that a grievance has been rejected or denied would not seem to be that kind of conduct that would deter an inmate or ordinary firmness from pursuing the grievance process. Certainly, [Plaintiff] has not been deterred from utilizing the grievance processes established by the Department of Corrections.

*Nifas v. Coleman*, 2012 WL 707063 (W.D.Pa. Feb. 9, 2012) (*quoting Alexander v. Forr*, Civil No. 04–0370, *4, 2006 WL 2796412 (M.D.Pa. Sept. 27, 2006)). Moreover, proper exhaustion is required in order to bring a federal civil rights action. Therefore, it seems unlikely that the mere denial of a grievance or denial of a grievance appeal ever would serve to deter a prisoner from filing grievances and/or lawsuits in the future. Thus, Plaintiff has failed to allege the second factor as to his retaliation claim regarding the alleged improper handling of his grievances. Consequently, the motion to dismiss will be granted as to this claim.

C.  <u>Eighth Amendment Claims</u>

The treatment an inmate receives in prison and the conditions under which he is confined "are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney,* 509 U.S. 25, 31, (1993). The Eighth Amendment to the United States Constitution prohibits the states from inflicting "cruel and unusual punishments" on those convicted of crimes. *Rhodes v. Chapman*, 452 U.S. 337, 344-46 (1981). The standard used to determine "cruel and unusual" is whether the

9

punishment is an "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Helling,* 509 U.S. at 32.

To state a claim under the Eighth Amendment, an inmate must assert that his punishment was objectively and subjectively cruel and unusual. *Wilson v. Seiter,* 501 U.S. 294, 298 (1991). The objective component is satisfied only when the deprivations alleged deny the prisoner of "the minimal civilized measure of life's necessities." *Helling,* 509 U.S. at 32 (*quoting Rhodes,* 452 U.S. at 346). Additionally, the deprivations must be serious, because only "extreme deprivations" are sufficient to make out an Eighth Amendment claim. *Hudson v. McMilian,* 503 U.S. 1, 9 (1992).

A plaintiff can satisfy the objective component if he can show that the alleged conditions of confinement deprive him of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care, and personal safety. *Rhodes*, 452 U.S. at 347-48; *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). However, the Constitution does not mandate that the prisoners be comfortable while incarcerated. *Rhodes*, 452 U.S. at 349. Prison conditions that are "restrictive" or "harsh" are merely part of the penalty that criminal offenders pay for their offenses. *Id.* at 347.

The subjective component requires that the defendant acted with "deliberate indifference," which imputes a state of mind of reckless disregard on the actor. *See Farmer,* 511 U.S. at 835; *see also Wilson,* 501 U.S. at 303. An inmate may fulfill the subjective element of such a claim by demonstrating that prison officials were aware of substandard conditions and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." *Ingalls v. Florio,* 968 F. Supp. 193, 198 (D.N.J. 1997).

1. *Failure to Protect*

The Complaint states that Defendant Hostivich, maintenance supervisor, was deliberately indifferent to Plaintiff's living conditions, because he "failed to respond to numerous work orders put in to fix the cell Plaintiff was injured in." Complaint at 8. As to Defendants Hawkinberry and Albright, both RHU Lieutenants, the Complaint states that these defendants were deliberately indifferent to the "care and safety" of Plaintiff when they placed and kept him in a cell which they knew was "hazardous." *Id.*

To establish a failure-to-protect claim, an inmate must show that he is "incarcerated under conditions posing a substantial risk of harm" and that Defendants were aware of this risk of harm and acted with deliberate indifference. *Farmer,* 511 U.S. at 833, 837. A finding of deliberate indifference requires that Defendants must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, [they] must also draw that inference." *Farmer*, 511 U.S. at 837.

The standard which has been applied by courts in cases involving inmate allegations that correctional staff exposed prisoners to dangerous and unsafe physical conditions inside a prison, is best described as follows:

> Deliberate indifference is comparable to criminal recklessness, and is shown by "something approaching a total unconcern for [the plaintiff's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." A defendant "must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must draw the inference." A defendant must have "actual knowledge of impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it." This total disregard for a prisoner's safety is the "functional equivalent of wanting harm to come to the prisoner." Negligence does not satisfy the "deliberate indifference" standard, and it is not enough to show that a prison guard merely failed to act reasonably. Deliberate indifference can be inferred only where defendants know there is a strong likelihood rather than a mere possibility that violence will occur. Prison officials cannot be expected to

> eliminate the possibility of all dangers. Thus, the right to reasonable protection does not include the right to protection from random acts.

*Quarles v. Palakovich,* 736 F. Supp.2d 941 (M.D.Pa. 2010) (*quoting Barrand v. Donahue,* No. 06-694, 2006 WL 2982051, *2 (N.D.Ind. Oct. 16, 2006) (citations omitted).

While a close case, the Court finds that, in light of Plaintiff's *pro se* status and, giving him the benefit of all reasonable inferences, the Complaint adequately alleges that Defendants Hostivich, Hawkinberry, and Albright had been advised and were aware of the problems with Plaintiff's cell flooding well before Plaintiff's incident.

The Court recognizes that discovery may well reveal that the alleged conduct of Defendants Hostivich, Hawkinberry, and Albright does not give rise to a deliberate indifference claim, but at this early stage of the litigation, the allegations of the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. Hence, Plaintiff's deliberate indifference claim against Defendants Hostivich, Hawkinberry, and Albright survives the Motion to Dismiss.

2. *Failure to Train*

The Complaint alleges that Defendants Coleman and Nickelson violated Plaintiff's constitutional rights under § 1983 by failing to adequately supervise or train their "subordinates in regards to the appropriate lawful constitutional rights, policies, procedures and protocols, inter alia, to the care and safety of the Plaintiff . . . ." Complaint, at 7.

"Under Section 1983, a supervisor may be liable for her failure to train or supervise her employees. . . . " *Whitfield v. City of Philadelphia,* 587 F.Supp.2d 657, 666 (E.D.Pa. 2008). To state a claim under § 1983 for failure to train, a complaint must allege that the supervisor's failure to train his or her employees amounts to " 'deliberate indifference to the rights of persons with whom the [untrained employees] c[a]me into contact.' " *Connick v.*

*Thompson,* ––U.S. ––,, 131 S. Ct. 1350, 1359 (2011) (*quoting City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989)). The United States Supreme Court has explained that in a failure to train claim, deliberate indifference requires proof that the supervisor "disregarded a known or obvious consequence" of his or her action. *Id.* at 1360 (quotation omitted). When a supervisor is "on actual or constructive notice that a particular omission in [her] training program" causes his subordinates to "violate citizens' constitutional rights," the supervisor may be deliberately indifferent if he chooses to retain his training program. *Id.* (*citing Bryan Cnty.,* 520 U.S. at 407). In other words, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (*quoting Bryan Cnty.*, 520 U.S. at 409); *see Washington v. City of Phila.,* Civ. A. No. 11–3275, 2012 WL 85480, at *6 (E.D.Pa. Jan.11, 2012). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick,* 131 S.Ct. at 1360.

However, " 'in a narrow range of circumstances,' a pattern of similar violations might not be necessary to show deliberate indifference." *Id.* at 1361 (*quoting Bryan Cnty.*, 520 U.S. at 409); *Washington,* 2012 WL 85480, at *8 ("To establish deliberate indifference from a single incident, a plaintiff must show that the municipality's failure to train was obviously going to lead to the constitutional violations alleged.") Such a circumstance occurs where a defendant is "on notice that, absent additional specified training, it was 'highly predictable' " that failing to train would amount to "conscious disregard" of the plaintiff's rights. *Connick,* 131 S.Ct. at 1365. In addition to proving deliberate indifference, a plaintiff must also demonstrate that the inadequate

13

training caused the alleged constitutional violation. *See Grazier v. City of Phila.,* 328 F.3d 120, 124–25 (3d Cir. 2003).

The allegations in the Complaint, as they relate to the deficiencies in the training program and the knowledge of Defendants Coleman and Nickelson to those alleged deficiencies, are merely legal conclusions bereft of factual support. For example, the Complaint does not allege that these Defendants were ever put on notice that there were deficiencies in the training program and that these Defendants deliberately chose not to act. It also fails to describe the nature of the training program, any particular deficiencies in the training program, that those deficiencies caused Plaintiff's injuries, or any facts that support the allegation that Defendants were aware or should have been aware of those alleged deficiencies.

Furthermore, to survive the Motion to Dismiss absent a sufficient allegation that Defendants Coleman and Nickelson were on notice that their training program was deficient in a particular respect, Plaintiff's claim must fall into the " 'narrow range of circumstances' " that would justify deliberate indifference based on a single incident. *Connick,* 131 S.Ct. at 1361 (*quoting Bryan Cnty*., 520 U.S. at 409). Plaintiff does not allege that Defendants' subordinates were wholly untrained, and it is not reasonable to infer from the sparse facts in the Complaint that the alleged deficiencies in the training program were "obviously" going to lead to a constitutional violation, *Washington,* 2012 WL 85480, at *8, or that it was "highly predictable" that failing to train would amount to "conscious disregard" for Plaintiff's rights, *Connick,* 131 S.Ct. at 1365. The Court therefore concludes that the Complaint fails to allege a plausible claim against Defendants Coleman and Nickelson for failure to train under § 1983, and will grant the Motion to Dismiss on this claim.

C.   Civil Conspiracy Claim

To demonstrate the existence of a conspiracy under § 1983, "a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law." *Laurensau v. Romarowics*, 528 F. App'x 136 (3d Cir. 2013) (internal citations omitted). "A bare assertion of conspiracy will not suffice." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2000) (quoting *Twombly*, 550 U.S. at 556). Rather, the plaintiff must allege facts from which one can reasonably infer that the defendants reached an agreement to deprive him of a constitutional right under color of law. *Parkway Garage, Inc. v. City of Phila.,* 5 F.3d 685, 700 (3d Cir. 1993), *overruled on other grounds, U.A. Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003).

Here, Plaintiff alleges that Defendant Coleman "conspired with his co-workers and friends to cover up the acts done by the officials who work for him . . . to deny Plaintiff's grievance and apply cruel and unusual upon the Plaintiff." Complaint, at ¶ 30.  The Complaint does not contain "facts from which a conspiratorial agreement can be inferred," *Great Western Mining & Mineral Co.,* 615 F.3d at 178, but rather is nothing more than a "bare assertion of conspiracy." *Twombly,* 550 U.S. at 556. The Complaint fails to allege facts from which one can reasonably infer that Defendant Coleman reached an agreement to deprive Plaintiff of a constitutional right under color of law. Accordingly, Plaintiff's claims against Defendant Coleman alleging civil conspiracy will be dismissed.

G.   Leave to Amend

If a civil rights complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile. *Alston v.*

*Parker*, 363 F.3d 229, 235 (3d Cir. 2004). A district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend. *Id.*

Given that the Court has already provided Plaintiff with an opportunity to amend, (*see* ECF No. 23 and Text Order of 01/02/2014), the Court is not required to provide him with further leave to amend as further amendment would be futile. *Shelley v. Patrick*, 481 F. App'x 34, 36 (3d Cir. 2012).

For the reasons discussed *supra*, the Court will not grant Plaintiff leave to amend as it would be futile.

**Conclusion**

For all the foregoing reasons, the Motion to Dismiss filed by Defendants will be granted in part and denied in part. An appropriate Order follows.


**AND NOW**, this 18th day of February, 2014,

It is hereby **ORDERED** that the Motion to Dismiss filed by Defendants is **GRANTED** in part and **DENIED** in part as follows:

1. The motion is **GRANTED** with respect to all claims brought against all Defendants in their official capacities;

2. The motion is **GRANTED** with respect to all claims brought against Defendants Coleman, Nickelson, and Walker and these Defendants are dismissed from the lawsuit;

3. The motion is **GRANTED** with respect to Plaintiff's retaliation claims against Defendant Albright;

4. The motion is **DENIED** with respect to Plaintiff's Eight Amendment deliberate indifference claims brought against Defendants Hostivich, Hawkinberry, and Albright.

It is further **ORDERED** that Defendants Hostivich, Hawkinberry, and Alright shall file a responsive pleading on or before **March 4, 2014**, in accordance with Federal Rule of Civil Procedure 12(a)(4)(A).

*s/ Cynthia Reed Eddy*
Cynthia Reed Eddy
United States Magistrate Judge

cc:    STEVEN OWENS
       JX-7951
       SCI Huntingdon
       PO Box 999
       1120 Pike Street
       Huntingdon, PA 16652

       Sandra A. Kozlowski
       Pennsylvania Office of Attorney General
       Email: skozlowski@attorneygeneral.gov