**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| STEVEN OWENS, | ) | Civil Action No. 2: 13-cv-0328 |
| | ) | |
| Plaintiff, | ) | |
| | ) | United States District Magistrate |
| v. | ) | Cynthia Reed Eddy |
| | ) | |
| BRIAN COLEMAN; SCOTT | ) | |
| NICKELSON, JOHN ALBRIGHT, | ) | |
| ROBERT HAWKINBERRY, RONALD | ) | |
| HOSTIVICH, and CARL WALKER, sued | ) | |
| in their individual and official capacities, | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Presently pending is the Motion for Summary Judgment filed by Defendants John Albright, Robert Hawkinberry, and Ronald Hostovich, with brief in support (ECF Nos. 52 and 53), and the brief in opposition filed by Plaintiff, Steven Owens (ECF No. 63). The issues have been fully briefed and the factual record has been developed. *See* ECF Nos. 54, 55, 58, 59, Sealed 59, and 62. After careful consideration of the motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that the motion should be granted.[1]

**Procedural Background**

Plaintiff, Steven Owens ("Plaintiff" or "Owens"), is a state prisoner committed to the custody of the Pennsylvania Department of Corrections and at all times relevant to this lawsuit

---

[1] All parties have consented to jurisdiction by the undersigned Magistrate Judge. *See* 28 U.S.C. § 636 et seq.; Consent to Trial / Jurisdiction by United States Magistrate Judge (ECF Nos. 5 and 24).

was incarcerated at SCI-Fayette, where the Defendants were employed.[2] This action was initiated by Owens on March 6, 2013, by the filing of a prisoner civil rights Complaint. (ECF No. 1.) Named as Defendants were Brian Coleman, Superintendent of SCI-Fayette; Scott Nickelson, Major of the Unit Management Team at SCI-Fayette; Ronald Hostivich, Maintenance Supervisor; Carl E. Walker, Captain of the Restricted Housing Unit ("RHU"); John Albright, and Robert Hawkinberry, Lieutenants of the RHU, all sued in their individual and official capacities. As a result of the Court's ruling on Defendants' motion to dismiss, Defendants Coleman, Nickelson, and Walker were dismissed from the lawsuit. Additionally, Plaintiff's claim for retaliation against Defendant Albright was dismissed. The remaining three defendants are Hostovich, Albright, and Hawkinberry.

Owens' surviving claim against Defendants Hostovich, Albright, and Hawkinberry is for cruel and unusual punishment under the Eighth Amendment due to their alleged deliberate indifference to a known "hazardous condition" his cell. Owens contends that Defendants knew of the unsafe condition and that the Maintenance Department failed to respond to numerous work orders to fix the problem. Defendants argue they are entitled to summary judgment as the record does not establish deliberate indifference as there is no evidence of a known dangerous condition in his cell.

### Factual Background

The summary judgment evidence of record reflects that on July 14, 2012, Plaintiff was placed in Cell JD-1012 in the RHU. On July 15, 2012, according to Plaintiff, as an inmate in the adjacent cell, JD-1011, took his in-cell shower, the shower in Plaintiff's cell "turned on by itself

---

[2] On April 10, 2013, Plaintiff notified the Court that he had been transferred to SCI-Smithfield in Huntingdon, PA. On October 30, 2014, Plaintiff notified the Court that he had again been transferred, this time to SCI-Mahanoy, where he remains incarcerated.

flooding" Plaintiff's cell.[3]   Plaintiff contends that as a result of the flooding, he slipped and fell

allegedly injuring his back and hitting his head on the floor.  On the day of his fall, Owens was

seen by medical personnel.  The medical record evidence indicates that Plaintiff said that he

could not move, but when he was assessed, it was observed that he could move his extremities

and neck without difficulty.   It was noted that there were no apparent injuries to his back, neck,

head, legs, or and knees.

The next day, Owens was seen by the medical department for a follow-up checkup.  It

was noted that he was standing and walking without difficulty.  His C-spine was checked and he

exhibited a full range of motion.

Plaintiff contends that Nurse Ida Ross informed him that another inmate, Stacey Vance,

who also had been housed in cell JD-1012, was recently injured in the same manner in the same

cell. Plaintiff claims that he was also informed by Sergeant Dobish that prior to his fall several

work orders had been placed with the Maintenance Department requesting to have cell JD-1012

repaired; however, Sergeant Dobish denies ever requesting the Maintenance Department to

repair the shower in the cell. (ECF No. 55-1 at pps. 3, 6.)

From the Complaint, it appears that Plaintiff was transferred to a different cell three (3)

days after his fall.  Complaint, at ¶ 31 (ECF No. 3).

On July 22, 2012, Owens filed an unsuccessful grievance against the "Maintenance

Department and anyone responsible for the unsafe conditions of JD-1012 cell."[4] (ECF No. 55-1,

---

[3]   The medical record of evidence shows that Owens told the medical department that "I
went to get into the shower and slipped on the wet floor from water that was shot out
automatically when the shower comes on and fell on my back."  The summary judgment record
also reflects that Owens was on shower restriction on July 15, 2012, and would not have been
getting into his in-cell shower that day.

[4]   Owens later explained that "anyone responsible for the unsafe conditions" included

Attachment 1-A.)[5]   The next day, on July 23, 2012, Carl Walker, the Captain of the RHU, submitted Work Order No. 2012-FYT-5816 reporting a potential plumbing problem in cell JD-1012.  The maintenance problem was described as follows:  "JD-12 in cell shower when the water is turned on in the pipe chase, the shower does not stop running and the water is leaking from the shower onto the cell floor."  (ECF No. 55-1, Exh. 5.)   Upon investigation, it was discovered that the diaphragm was broken causing the water to leak when the water was turned on in the pipe chase.  The part was replaced and the shower was repaired on August 7, 2012. (ECF No. 58, ¶ 7.)

**Standard of Review**

Summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, the record indicates that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element to that party's case and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The moving party bears the initial burden of identifying evidence or the lack thereof that demonstrates the absence of a genuine issue of material fact. *National State Bank v. Federal Reserve Bank of New York*, 979 F.2d 1579, 1582 (3d Cir. 1992). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Ind. Co. v. Zenith Radio*

Captain Carl Walker, the maintenance department, and the RHU officials who were aware of the cell's unsafe conditions.  (ECF No. 55-1 at p. 5.)

[5]      Plaintiff appealed this grievance, but it was ultimately dismissed at the final appeal level because the grievance "exceeded two pages (was too lengthy)."  (ECF No. 55-1, at 2.)

*Corp.*, 475 U.S. 574, 587 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). The inquiry, then, involves determining "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990) (quoting *Anderson*, 477 U.S. at 251–52). If a court, having reviewed the evidence with this standard in mind, concludes that "the evidence is merely colorable . . . or is not significantly probative," then summary judgment may be granted. *Anderson*, 477 U.S. at 249–50. Finally, while any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed.R.Civ.P. 56(c); *Celotex*, 477 U.S. at 324.

### Discussion

Owens claims that Defendants were deliberately indifferent to his "health and safety" because they placed him in cell JD-1012 although they knew of the unsafe condition in the cell. Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.' " *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)). "Prison conditions may amount to cruel and unusual punishment if they cause 'unquestioned and serious deprivations of basic human needs . . . [that] deprive inmates of the minimal civilized measure of life's necessities.' " *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417–18 (3d Cir. 2000) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)) (alteration and omission in original). "To demonstrate a deprivation of his basic human needs, a plaintiff must show a sufficiently serious objective deprivation, and that a prison official

subjectively acted with a sufficiently culpable state of mind, i.e., deliberate indifference." *Id*. at 418 (citation omitted).

The Court finds that the summary judgment record is bereft of any evidence that these Defendants knew of the unsafe condition in Plaintiff's cell. All three Defendants submitted Declarations in which they each state that they were not aware of any plumbing problems with cell JD-1012 prior to Plaintiff's report of water in his cell. (ECF No. 55-1, at pps. 42 and 45; ECF No. 58 at 3.) Additionally, Defendant Hostovich, a Corrections Facility Maintenance Manager 3, stated in his Declaration that he checked the work order system for the work orders submitted on J Block from June 2012 through August 2012 and only one work order was submitted for cell JD-1012, and that work order was submitted after Plaintiff's fall.[6]

Plaintiff responds that the Defendants knew about the unsafe condition because Inmate Vance had fallen in the same cell after bathing in the in-cell shower three (3) days earlier on July 12, 2012. However, while the summary judgment record reflects that Defendants may have known that Vance fell, the summary judgment record does not reflect that Defendants knew that Vance fell as a result of a plumbing problem in the cell.

At the time of the incident, Inmate Vance reported that he "slipped getting out of my shower." (Sealed ECF No. 59.) It was not until Vance filed his grievance that he reported that

---

[6] The Hostovich Declaration states that the work order issued was "2012-FYT-6176." However, upon reviewing the Work Order Search that was attached to his Declaration, the Court notes that "2012-FYT-6176" was entered on 8/6/2012 and was a work order for cell D 22, stating that "no cold water, doesn't work." Cell D 22 is not the cell at issue. The next entry on the Work Order Search is "2012-FYT-5816", which was entered on 7/23/2012 and was a work order for cell D 12. The work description is "JD-12 in cell shower when the water is turned on in the pipe chase, the shower does not stop running and the water is leading from the shower onto the cell floor." This is clearly the entry to which Hostovich was referring. The work order search reflects three other work orders, none of which is relevant to this litigation. (ECF No. 58 at 4.)

he fell due "to a leak running from a crack in the bottom side of the shower . . . ." (ECF No. 55-1 at 26.)  It is worth noting that Vance's grievance was not filed until July 16, 2012, the day <u>after</u> Plaintiff's incident.

Defendant Albright was on duty at the time of the Vance incident.  Immediately after Vance reported that he fell, Defendant Albright called Maintenance.  Maintenance came and checked the cell, cleared out the drain in the cell, and told him that the cell was fine.[7]

Defendant Hawkinberry was on duty on July 12, 2012, on the 6 am to 2 pm shift. However, according to his Declaration, he was not aware of Inmate Vance's alleged fall until some time after as Vance fell during the 2 pm to 10 pm shift.  Plaintiff has failed to produce any evidence from which a reasonable fact finder could find that Defendants knew about any plumbing problems with cell JD-1012 prior to his fall.

Even assuming *arguendo*, that Defendants knew about the faulty shower in JD-1012, a slippery floor does not give rise to a constitutional violation. "Slippery prison floors are not objectively serious conditions giving rise to Eighth Amendment protection." *Santiago v. Guarini*, 2004 WL 2137822, at *2 (E.D. Pa. Sept. 20, 2004) (citing *LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1993) ("[S]lippery prison floors . . .  do not state even an arguable claim for cruel and unusual punishment.")). As noted recently by the United States Court of Appeals for the Third Circuit, an inmate's claim that correctional officers knew of flooding near the water dispensers, but did not replace them until after he was injured, "suggested at most negligence, which does not amount to a constitutional violation.  *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 849

---

[7]    According to the Declaration of Ronald Hostovich, "[i]f there is a safety or security issue the inmate can inform unit staff and staff will call Maintenance and they will take care of it without the work order being in the system.  There are times that work orders are completed and not entered into as being completed on the day it was completed." (ECF No. 58, at ¶ 4.)  There does not appear to be a work order in the system for cell JD-1012 for July 12, 2012.

(1998)." *Montgomery v. Aparatis Dist. Co.*, -- F. App'x ---, 2015 WL 1600521 (3d Cir. April 10, 2015).

In his brief in opposition, Plaintiff states that "defendants were negligent 'in failing to repair and/or allowing to exist a defective shower that floods the cell." ECF No. 63 at 5. The problem Plaintiff faces, though, is that he did not allege negligence in his Complaint. Rather, the Complaint is specific that Plaintiff's claims are based on the alleged violations by Defendants of Plaintiff's "rights under the constitution." Complaint at 9 (ECF No. 3).

However, giving Plaintiff, a pro se litigant, the benefit of *Haines v. Kerner*, 404 U.S. 519 (1972) and its progeny, which provides that courts must liberally construe pro se pleadings, and assuming *arguendo* that the Complaint contains a negligence claim, the Court will decline to exercise supplemental jurisdiction.

Jurisdiction over supplemental claims is governed by 28 U.S.C. § 1367(a), which provides that "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, the Court has discretion to decline to exercise supplemental jurisdiction, if it "has dismissed all claims over which it has original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). The Court of Appeals has stated that "the district court must decline the . . . state claims unless considerations of judicial economy, convenience and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco,* 204 F.3d 109, 123 (3d Cir. 2000) (quoting *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995)). *See also Spencer v. Bush*, 543 F. App'x 209, 213 (3d Cir. 2013) (citing *Hedges*, 204 F.3d at 123).

Because summary judgment will be granted as to Plaintiff's federal claims, and given that there are no extraordinary circumstances which would warrant the exercise of supplemental jurisdiction over the pendent state law claims, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law negligence claims. *Angst v. Mack Trucks, Inc.*, 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the appropriate Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

Although the Court is sympathetic towards Plaintiff, unfortunately he has failed to present a viable federal cause of action. For the foregoing reasons, the Motion for Summary Judgment filed by Defendants John Albright, Robert Hawkinberry, and Ronald Hostovich will be granted. An appropriate Order follows.

## ORDER

**AND NOW**, this 4th day of June, 2015,

It is hereby **ORDERED** that the Motion for Summary Judgment filed by Defendants John Albright, Robert Hawkinberry, and Ronald Hostovich is **GRANTED.**

The Clerk of Court shall docket this case closed.

**AND IT IS FURTHER ORDERED** that pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, Plaintiff has thirty (30) days to file a notice of appeal as provided by Rule 3 of the Federal Rules of Appellate Procedure.

s/ Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc:    STEVEN OWENS
       JX-7951, SCI Mahanoy
       301 Morea Road
       Frackville, PA 17932
       (via U.S. First Class Mail)

Sandra A. Kozlowski
Pennsylvania Office of Attorney General
(via ECF electronic notification)